Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JOHN STEWART CUSTOM | ) | |
| WOODWORKING, INC. | ) | Case No. 16-bk-0816 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**

On December 28, 2016, Blake and Lindsey Stewart (the "Homeowners") filed a motion seeking relief from the automatic stay in order to pursue their civil action against the shareholders of John Stewart Custom Woodworking, Inc. (the "Debtor"). Specifically, the Homeowners seek a declaration that the automatic stay does not apply because the state court proceeding is only nominally against the Debtor and will not affect estate property. The Debtor's shareholders filed a response asserting that the stay applies because such a proceeding would prejudice the Debtor.[1]

At the court's first hearing on the matter, held on January 26, 2017, the court and the parties agreed, based on the court's opinion in *In re Charles Edwards Enterprises, Inc.*, that claims based on alter ego theories belong first to the Chapter 7 trustee and can be brought by a creditor only if the trustee abandons the claim. 344 B.R. 788 (Bankr. N.D.W. Va. 2006). In light of that proposition, the trustee initiated settlement discussions with the Debtor's sole shareholders, John and Mary Stewart. On May 5, 2017, the trustee filed a motion seeking to compromise the civil action. Per the terms of the proposed settlement, the Debtor's shareholders will pay $28,475.00 to the estate to settle the veil-piercing action originally identified by the Homeowners. The

---

[1] By their response, the Debtor's shareholders purported to respond on behalf of the Debtor. However, the trustee supplanted the shareholders as of the petition date such that the shareholders lacked authority to file a response on behalf of the Debtor. Consequently, the shareholders filed a response on their own behalf that incorporated their previous response by reference.

Homeowners object, asserting that the settlement of their claims, rooted in veil-piercing theory, is not in the estate's best interest, that the trustee should abandon the estate's interest in their claims against the shareholders, to the extent it has any, and that the proposed settlement is inequitable.

On June 20, 2017, the court conducted a hearing regarding the proposed settlement. At that time, the court suggested that the authority to bring a claim containing a veil-piercing element needed reexamination; that is, for purposes of the case at hand, whether the claim actually belongs to or can be maintained by the estate and thus can be settled in conjunction with the compromise offered by the trustee or whether it falls outside property of the estate and thus belongs properly to the Homeowners. After discussion and argument on the record regarding the propriety of the compromise, the court took the matter under advisement. On June 21, 2017, the shareholders voluntarily filed their Memorandum in Support of Motion to Compromise asserting that the veil-piercing action is property of the estate. No other interested party filed a brief on the issue because the court did not solicit briefing from the parties.

For the reasons stated herein, the court will deny the trustee's motion because he purportedly seeks to settle the Homeowners' claims, which are not property of the estate subject to his authority to settle. Moreover, the court will grant the Homeowners' motion seeking relief from the automatic stay.

## I.  BACKGROUND

Before bankruptcy, the Debtor was a custom-home builder. Its sole shareholders are John and Mary Stewart. The Debtor and the Homeowners contracted for the Debtor to build a residence for the Homeowners. However, the relationship soured, resulting in the Homeowners bringing suit against the Debtor in the Circuit Court of Monongalia County, West Virginia ("State Court") on June 10, 2016. The Debtor then filed its petition for bankruptcy relief on August 5, 2016, and the State Court proceeding was stayed. In light of information that the Homeowners learned through the Debtor's meeting of the creditors on September 14, 2016, they sought leave to file an amended complaint in the State Court to add the Debtor's shareholders as individual defendants under a veil-piercing theory. The State Court conducted a hearing on the matter on November 28, 2016, wherein it expressed concern that granting the motion would violate the automatic stay and therefore refused to take any further action in the case absent a determination from the bankruptcy court. Thereafter, the Homeowners sought relief in this court.

The Homeowners assert that the Debtor breached their mutual contract, violated fiduciary duties owed to them, and misappropriated funds paid by them during the course of the construction of their home. They seek to recover approximately $270,000.00 in damages. Among their claims, the Homeowners assert that the Debtor used funds designated solely for the costs associated with the construction for their home for unintended and impermissible expenses, including salaries of the shareholders. Moreover, the Homeowners assert that there is a legal basis for the Debtor's shareholders to be held liable individually for each of their claims because the Debtor failed to maintain corporate formalities by allowing the shareholders to maintain and pay charges for a credit card used in the operation of the Debtor, allowing the shareholders to make loan payments on behalf of the Debtor to the Debtor's creditors, and operating a business that is grossly undercapitalized. In particular, the Homeowners maintain that the Debtor misappropriated funds paid to it by the Homeowners out of necessity specifically because the Debtor was undercapitalized.

During the course of the bankruptcy proceeding, the Chapter 7 trustee analyzed the claims of the Homeowners against the Debtor and the veil-piercing theory that would allow the Homeowners to recover from the Debtor's shareholders. He found that the Homeowners claims against the Debtor had merit and related to faulty workmanship, both structural and aesthetic in nature. He further evaluated the law relating to piercing the corporate veil in West Virginia and arrived at a valuation of the claim against the shareholders. He then sought to settle with the shareholders for $28,475.00 and they agreed.

## II.  ANALYSIS

*i.   Authority to bring alter-ego or veil-piercing claims*

This court previously addressed the issue of veil piercing in the case of *In re Charles Edwards Enterprises, Inc.* 344 B.R. 788 (Bankr. N.D.W. Va. 2006). Therein, this court held that "alter ego theories . . . are the exclusive property of the bankruptcy estate and cannot be pursued by any party other than the Chapter 7 trustee in the absence of abandonment or the grant of derivative standing." *Id.* at 790. In that instance, the court concluded that all alter ego claims belong to the Chapter 7 trustee; albeit without giving consideration to the nature of the injury associated with a particular claim. *Id.* Notably, however, none of the cases relied upon by the court lead to the conclusion that all alter ego theories are exclusively property of the estate. *Baillie Lumber Co., LP v. Thompson*, 344 B.R. 788, 790 (11th Cir. 2005) (under Georgia law, an alter ego

action is property of the bankruptcy estate if the claim is a general claim that is common to all creditors); *Central Vermont Public Service Corp. v. Herbert*, 341 F.3d 186, 192 (2d Cir. 2003) (failing to distinguish general and specific claims despite relying upon *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989); *Steyr-Daimler-Puch of America Corp. v. Pappas*, 852 F.2d 132, 136 (4th Cir. 1988) (stopping short of addressing whether a trustee may bring an alter ego claim as a representative of creditors because, under Virginia law, alter ego claims are property of the trustee.) Based upon the analysis that follows, the court is now compelled to revisit and refine its holding in *In re Charles Edwards Enterprises, Inc.*, because further review and consideration of the relevant legal authority shows that alter ego theories are the exclusive property of the bankruptcy estate only when the harm incurred is general to all creditors or when the estate possesses a direct cause of action against a shareholder. When the resulting injury is specific to an individual creditor or group of creditors, however, the injured creditor or creditors are the exclusive owners of the claim even if the claim relies, in part, on a veil-piercing theory.

Because "the trustee stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy," it is clear that trustees may bring direct causes of action against insiders of a corporation under an alter ego theory. *In re Cabrini Medical Center*, 489 B.R. 7, 16 (S.D.N.Y. 2012). However, "it is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991) *citing Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 34 (1972). Thus, careful analysis must be given to the origin of the claim. However, as explained by Bankruptcy Judge Schneider, confusion arises among courts addressing issues of corporate law involving insiders because each type of corporate claim requires a separate analysis:

> Confusion results when courts mistakenly apply the term "piercing the corporate veil" to distinctly different causes of action against the individuals who stand behind the corporation. The true action to "pierce the corporate veil" is brought by parties injured by the corporation to hold liable those corporate officers, directors and/or stockholders whose fraudulent conduct of the corporation caused the injury to the plaintiffs. Liability for harm caused by the corporation is imposed upon the corporation's alter egos by disregarded corporate form.

4

> A completely different cause of action is one brought directly by the corporation (or derivatively by shareholders) against corporate alter egos for damage to the corporation itself through mismanagement or fraud. Because the bankruptcy trustee's standing to prosecute a lawsuit on behalf of the bankruptcy estate is the same as the debtor's standing absent the bankruptcy case, the trustee may assert corporate causes of action in the bankruptcy court against third parties who have injured the debtor, including insiders whose mismanagement may have created the necessity of filing the bankruptcy petition in the first place.

*National City Bank of Minneapolis v. Lapides (In re Transcolor Corp.)*, 296 B.R. 343, 362 (Bankr. D.Md. 2003). Thus, the first step to assessing a claim against corporate insiders is to determine whether the claim seeks to pierce the corporate veil or if it is actually a direct claim[2] against the shareholders brought by trustee standing in the shoes of the corporation. *Id.* at 362-64; *see also C.F. Trust, Inc. v First Flight, Ltd. P'ship*, 306 F.3d 126, 134 (4th Cir. 2002) ("In a traditional veil-piercing case, a creditor of a corporation seeks to reach the assets of a corporate shareholder or director to satisfy a corporate debt."). If the claim is a direct claim, then it is property of the estate, and the trustee has the authority to prosecute or settle the claim. *Lapides*, at 363.

However, the distinction "between suits brought by a corporation against its officers and those brought by defrauded parties against a corporation and its officers" is more subtle than it may initially appear: causes of action for veil-piercing frequently arise "from breaches of fiduciary duty by the corporate debtor's principals that could have been brought directly by the debtor." *Id.* at 366 (concluding that claims that appear to seek to pierce the corporate veil are actually disguised claims of fraud against the corporation); *see also Steinberg v. Buczynski*, 40 F.3d 890 (7th Cir. 1994) (acknowledging that disregard of corporate form could be a "species of wrongdoing that entitles the corporation to recapture all the corporate moneys [from the principals]."). Adding to the confusion among the caselaw, due to the subtlety of this distinction, courts may conclude that

---

[2] There is the risk of confusing terms of art here. The claims herein referred to as direct claims are frequently subdivided into direct or derivative claims outside of bankruptcy, depending on whether the action is pursued directly by a corporation or derivatively by its shareholders. *See National City Bank of Minneapolis v. Lapides (In re Transcolor)*, 296 B.R. at 363. Moreover, some courts have referred to specific veil-piercing claims as direct claims and claims maintained by a trustee standing in the shoes of a creditor as derivative claims. To avoid this confusion, in this opinion, the court refers to independent causes of action against corporate insiders brought by the trustee on behalf of the corporation itself as direct claims. Additionally, causes of action containing veil-piercing theories are subdivided into general claims—those where the injury runs to all creditors—and individual claims—those where the injury is peculiar to a single creditor or group of creditors.

5

a trustee owns a veil-piercing action, when in reality, the claim is a direct claim disguised under a veil-piercing theory. *Lapides* at 366.

If the court determines that the pertinent claim is not one whereby a corporation or its shareholders seek to hold insiders accountable as an independent cause of action, but rather is a claim brought by a third party to pierce the corporate veil and hold shareholders liable for corporate debts, then the court must determine whether there is any other justifiable reason why the claim should be brought by the trustee rather than the creditor pursuing the claim. When claims asserting veil-piercing theories are available to all creditors, courts generally find justification exists for a trustee to bring the claim for one of two potential reasons. First, some courts find that § 544(a) of the Bankruptcy Code grants the Trustee the authority to assert some rights of creditors because "federal bankruptcy law permits the trustee to recover property on behalf of all creditors for equitable distribution." *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339, 1346 (2d Cir. 1987). Alternatively, the majority of courts reject that application of § 544(a) of the Bankruptcy Code, but still find that an action vests in a trustee as an assignee for the benefit of creditors because all creditors have an equal right and interest in claims wielding a general veil-piercing theory. *Picard v. JPMorgan Chase & Co.*, 460 B.R. 84, 96 (S.D.N.Y. 2011); *see also Mannuci v. Cabrini Medical Center (In re Cabrini Medical Center)*, 489 B.R. 7, 22 ("[I]nside of bankruptcy, an orderly distribution of the debtor's assets is the rule. Prior to the bankruptcy petition, any creditor . . . would have standing to assert a [veil-piercing theory based] claim against [the debtor] . . . . Once the petition was filed, all such claims became property of the estate.").

Courts analyzing whether a veil-piercing theory effects all creditors typically look to who is harmed when the corporate veil is inequitably maintained. *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339, 1349 (7th Cir. 1987) ("To determine whether an action accrues individually to a claimant or generally to the corporation, a court must look to the injury for which relief is sought and consider whether it is peculiar and personal to the claimant or general and common to the corporation and creditors."). Where "the right to relief and the benefits of relief are peculiar to individual or groups of creditors, the right is not a generalized one that belongs to the debtor's estate." *Picard v. JPMorgan Chase & Co.*, 460 B.R. 84, 96 (S.D.N.Y. 2011). Thus, "a creditor has standing to bring an alter-ego claim when the harm alleged in support of the claim is personal to them; a creditor lacks standing to bring such a claim when the harm alleged is general." *In re Cabrini Medical Center*, 489 B.R. 7, 17 (S.D.N.Y. 2012). Moreover, the accrual

of benefit to all creditors on its own is not enough to make claims general when creditors are harmed in varying forms or degrees. *Picard*, 460 B.R. at 96 ("any recovery on [such] claims will not necessarily accrue to the benefit of all creditors harmed by the fraud, at least not in the same way.").

Ultimately, the analysis of who is harmed turns on state law. *Pappas*, 852 F.2d at 135. In West Virginia, courts permit plaintiffs "to 'pierce the corporate veil' in order to hold the shareholder(s) actively participating in the operation of the business personally liable." Syl. Pt. 3, *Laya v. Erin Homes, Inc.*, 352 S.E.2d 93, 94 (W.Va. 1986). Notably, this court was not able to identify a West Virginia case that permitted veil-piercing as an independent cause of action. Rather, it is an equitable remedy by which a plaintiff may hold a shareholder liable for damages awarded for a concurrent legal cause of action. *Id.* at 347. Thus, it is evident that a party seeking to pierce the corporate veil must have a separate cause of action for which it seeks to recover from a corporation.

In West Virginia, courts will disregard corporate form, and thus pierce the corporate veil, when "(1) there [is] such unity of interest and ownership that theseparate [sic] personalities of the corporation and the individual shareholder(s) no longer exist (a disregard of formalities requirement) and (2) an inequitable result would occur if the acts are treated as those of the corporation alone (a fairness requirement)." *Id.* at Syl. Pt. 3. Moreover, "grossly inadequate capitalization combined with disregard of corporate formalities, causing basic unfairness, are sufficient to pierce the corporate veil." *Id.* at Syl. Pt. 5. Therefore, courts must look at both the actions of the corporation with respect to corporate formalities and the effect that those actions have on a third-party seeking to recover from the corporation's shareholders.

In this case, both the Chapter 7 trustee and the Homeowners have expressed an interest in asserting a claim against the Debtor's shareholders. The Homeowners assert a series of claims relating to the inadequate construction of their home and seek to hold the shareholders liable for their anticipated recovery because the Debtor, through its shareholders, failed to maintain corporate form and operated a business without adequate capitalization. Moreover, the Homeowners have outlined their argument in State Court. They assert that the Debtor misappropriated money advanced by them for construction of their home because the Debtor was undercapitalized, although they also more generally argue that the Debtor failed to respect

7

corporate formalities and was grossly undercapitalized.[3] The trustee attempts to settle the Homeowners' claims in reliance on *In re Charles Edwards Enterprises, Inc.*, and its holding, notwithstanding the discussion earlier in this opinion distinguishing its authoritativeness, that the trustee owns all alter ego claims against a debtor's shareholders. The trustee does not assert that the corporation possesses a cause of action against the shareholders for damage to the corporation itself through mismanagement or fraud. Although the shareholders assert that the corporation suffered harm because it became unable to pay its debts, there is no indication, at this time, that such a harm was brought about by an independent cause of action against the shareholders based upon, for instance, mismanagement or fraud. Moreover, the asserted justifications for piercing the veil—failure to maintain corporate form and operation of a business without adequate capitalization—do not, as the facts are currently before the court, appear to contain a disguised direct claim that the trustee could bring.[4] Thus, this is a dispute over who possesses the right to bring the Homeowners' claims that contain veil-piercing elements. Therefore, having eliminated a direct claim by the estate as being in play, the court is tasked with determining whether the Homeowner's claim is general to all creditors or specific to them. As explained above, this requires an analysis of whether the harm is peculiar to the Homeowners or common to all creditors.

There are essentially two assertions provided by the Homeowners, and adopted by the trustee in seeking to settle the matter, justifying the theory for piercing the corporate veil. First, the Debtor and its shareholders disregarded corporate form by allowing the Debtor's shareholders to pay corporate debts with noncorporate funds. Second, the Debtor operated a home construction business without adequate capitalization necessary to engage in such a business. The Homeowners allege that, because of these two variables, the shareholders should be held liable to them for their actions for breach of contract, breach of fiduciary duty, and misappropriation of the funds that they paid to have their home constructed. Importantly, the Homeowners specifically point to the Debtor's misappropriation of the funds directed to the Debtor for the construction of the Homeowner's residence as evidence of the Debtor's undercapitalization by asserting that the Debtor needed to misappropriate those funds in order to conduct its ordinary business. The

---

[3] This is not meant to be viewed as an evaluation of the merits of the Homeowners cause of action or veil-piercing theory; rather it is an attempt to determine the nature of the harm.

[4] This is not to say that no such claim exists, but merely that the trustee has not identified such a claim and it is not readily evident to the court that such a claim exists.

8

connection between the Debtor's alleged gross undercapitalization and the alleged misappropriation of funds paid to the Debtor for construction of the Homeowners' residence demonstrates an injury particular to the Homeowners. The Homeowners also assert a more general assertion that the corporate veil should be pierced for lack of corporate formality and for gross undercapitalization; and that assertion is available to all creditors. However, it is clear, on the facts asserted by the Homeowners, particularly because of the alleged misappropriation, that the Homeowners were subjected to a greater degree of harm than any other creditor. Thus, the Homeowners possess an individual claim that does not belong to the estate and may not be prosecuted by the trustee.

Because the trustee seeks to settle a claim that is outside of his authority to prosecute or settle, the court will deny the trustee's motion to compromise the claim. Insofar as the trustee has other claims that he seeks to compromise with the shareholders, he may submit a new motion to compromise.[5]

ii.   *Automatic Stay*

Upon reaching a determination that the claims involving veil-piercing rightfully belong to the Homeowners, and are thus outside of the trustee's authority to settle, the court now turns to the Homeowner's motion regarding the automatic stay. The Homeowners assert that the automatic stay does not apply and should not prevent them from amending their State Court complaint to name the Debtor's shareholders as defendants under a veil-piercing theory because the Debtor will not be involved in the litigation as they seek to proceed only against the shareholders individually. Moreover, they assert that the Debtor will be dissolved, thus it will not suffer any harm from allowing the Homeowners to proceed in State Court against the shareholders.

The automatic stay applies to the commencement or continuation of a judicial action or proceeding against the debtor, and to any act to obtain possession of property of the estate or to exercise control over property or the estate. 11 U.S.C. § 362(a)(1) and (3). Notably, the stay does not apply to the Debtor's shareholders and no party has sought to extend the stay to protect them. Based on the analysis in Part III.i., the claim that the Homeowners seek to prosecute is not estate

---

[5] The Debtor's shareholders argued that the court should give deference to the trustee because he is entitled to exercise reasonable business judgment, and therefore, the court should accept his conclusion that the settlement involves estate property. Although trustees are entitled to exercise business judgment in pursuing and settling causes of action owned by the estate, trustees are not entitled to deference in determining whether property belongs to the estate.

property and thus may be pursued against the Debtor's shareholders without violating the automatic stay.  Therefore, the only pertinent concern regarding the applicability of the automatic stay is whether the proceeding violates the stay because it is a proceeding against the Debtor or otherwise harms the estate.  Insofar as the Debtor is a named defendant in the proceeding in the State Court lawsuit, the automatic stay is implicated, because it is, at least nominally, a proceeding against the Debtor.  However, the Debtor's assets will not be affected because the Homeowners seek to proceed only against the Debtor's shareholders, thus the Debtor will not need to defend itself nor could it be found liable.  Nonetheless, because the Debtor is a named defendant in the proceeding, the court will address whether cause exists to lift the stay.

Relief from the automatic stay may be granted for cause.  11 U.S.C. § 362(d)(1).  "Cause" is not specifically defined in the Bankruptcy Code, but "a desire to permit an action to proceed to completion in another tribunal may provide . . . cause."  HR Rep. No. 595, 95th Cong., 1st Sess. 343-33 (1977).  "Congress . . . has granted broad discretion to bankruptcy courts to lift the automatic stay to permit the enforcement of rights against property of the estate."  *Claughton v. Mixon*, 33 F.3d 4, 5 (4th Cir. 1994).  In exercising its discretion to determine if "cause" is present to lift the stay, the factors the court is to consider include:

> (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy . . . and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

*In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992).  In considering these factors, "[t]he court must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied."  *Id*.  The moving party has the burden to make a prima facie case that "cause" exists to lift the stay, after which the burden shifts to the party opposing the motion to demonstrate that the stay should be left in place.  *E.g., In re Joyner*, 416 B.R. 190, 192 n.2 (Bankr. M.D.N.C. 2009) ("[T]he party seeking relief from the stay has the initial burden of production . . . to establish a prima facie case for relief, [however] the burden of proof, i.e., the burden of persuasion, rests on the party opposing relief on all issues except the existence of equity.") (citations omitted); *see* § 362(g).

Here, based on the totality of the circumstances, the above factors weigh in favor of lifting the stay.  First, the causes of action alleged by the Homeowners involve only issues of state law

and deal with events that took place before the filing of the Debtor's bankruptcy petition. Thus, the expertise of the bankruptcy court is unnecessary.

Second, lifting the stay will promote judicial economy. The state court proceeding is already underway. The Homeowners now seek to proceed with their litigation against the Debtor's shareholders instead of the Debtor itself. Third, the Debtor's bankruptcy estate does not need protection relating to this matter. The Homeowners' seek to proceed against the Debtor's shareholders, and the Debtor will soon be liquidated and dissolved.

Additionally, the scale tips in favor of lifting the stay when balancing the potential prejudice to the Debtor's estate against the hardships of the Homeowners if stay relief is denied. Although the trustee may be implicated in some discovery, the Debtor and its estate will otherwise be undisturbed by the proceeding. The estate will not be subjected to a judgment nor will the trustee need to defend any claims against the Debtor. On the other hand, the Homeowners would suffer serious hardship if the stay were not lifted. Refusing to lift the stay would unduly delay the ability to resolve the dispute between the Homeowners and the Debtor's shareholders. Importantly, the Homeowners seek to proceed solely against the Debtor's shareholders and no party has moved to extend the stay to the shareholders. Insofar as the automatic stay applies, there is sufficient cause to grant relief from stay in order to allow the Homeowners to proceed against the Debtor's shareholders in State Court because the Debtor's estate will not be harmed.

### III.  CONCLUSION

For reasons stated herein, the court cannot grant the trustee's motion to compromise because the trustee lacks authority to settle the Homeowners claim. Moreover, the Homeowners may proceed in State Court against the Debtor's shareholders under a veil-piercing theory without violating the automatic stay. Furthermore, the court will lift the automatic stay for cause to allow the Homeowners to proceed with their claims in State Court that name the Debtor as a defendant. Therefore, the court will enter two separate orders denying the trustee's Motion to Compromise Claims and granting the Homeowners' Motion for Relief from Stay.